UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELINA LAVONNE CARPENTER,

                Plaintiff,

       v.                                                           09-CV-0079-A

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____

## **INTRODUCTION**

Plaintiff Melina Lavonne Carpenter ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking reversal of the Commissioner of Social Security's ("the Commissioner") final decision finding that she was not entitled to Disability Insurance and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act. The plaintiff claims she is disabled due to vision problems, fatigue, weakness, and headaches secondary to diabetes mellitus, as well as obesity and inflammation of the left knee. The Commissioner found that the plaintiff was not disabled because the plaintiff was capable of performing her past relevant work as a Red Cross blood donor recruiter, as well as other substantial gainful activity that exists in significant numbers in the national economy. On August 14, 2009, both the plaintiff and the Commissioner moved for judgment on the pleadings. On October 8, 2009, the Commissioner filed a memorandum in response to the plaintiff's motion and in further support of his own motion for judgment on the pleadings. For the reasons stated, the

Commissioner's motion for motion on the pleadings is granted and petitioner's motion is denied.

## **BACKGROUND**

On July 24, 2006, the plaintiff applied for disability benefits and SSI claiming that she has been unable to work as of November 6, 2005. The plaintiff's application was denied. The plaintiff subsequently requested a hearing before an Administrative Law Judge (ALJ), which took place on March 6, 2007 before ALJ Marilyn Zahm. The plaintiff was represented by counsel at the hearing. In a decision dated December 20, 2007, ALJ Zahm found that the plaintiff was not disabled because her residual functional capacity (RFC) was consistent with her past relevant work, as well as other work existing in significant numbers in the national economy. The Appeals Council denied plaintiff's request for review on December 19, 2008, and this action followed.

The plaintiff claims she is disabled due to vision problems, fatigue, weakness, and headaches secondary to diabetes mellitus. (Tr. 120). The plaintiff was 35 years old at the time of her hearing and weighed 290 pounds. (Tr. 36-37). She completed high school and two years of college, has training as a certified nursing assistant, and past work experience as a nursing assistant, patient care attendant in a hospital, home health aide, residential rehabilitation specialist for a disability agency, youth/family development specialist at a group home for children, day program specialist for a social service agency, and a Red Cross blood donor recruiter. (Tr. 38; 100-104; 107; 122; 126). The plaintiff last worked on November 7, 2005, when she passed out from high blood sugar levels. (Tr. 38-40; 108-09; 121). She testified her doctor has not released

2

her for work since that time because her blood sugar is still not under control and her vision had worsened. (Tr. 38).

The plaintiff's daily activities involved helping her 12 year old son get ready for school, getting herself dressed, and performing light housework. (Tr. 42; 129). The plaintiff was able to do the dishes, sweep and mop, vacuum, wash laundry, and shop. (Tr. 42-43; 131; 132). She had no problems with personal care. (Tr. 130).

The plaintiff testified that due to her vision, she could no longer be an aide to the disabled because that job required driving and administering medication. (Tr. 47). She testified she had been experiencing migraine headaches on and off for approximately one year, and felt fatigued from high blood sugar. (Tr. 47-48; 53). She stated she needs to lie down for three to four hours when her blood sugar spikes, and that she believed she could not get through an eight-hour day without a spike or drop in blood sugar, or without having to lie down. (Tr. 53-54).

On November 1, 2005, the plaintiff was admitted to Sisters of Charity hospital with complaints of headache, dizziness, blurry vision, weakness, polyuria, and polydipsia. (Tr. 171). She was diagnosed with uncontrolled diabetes mellitus, and was discharged in stable condition after being given insulin to lower her blood sugar. (Tr. 171-72). On November 7, 2005, physician's assistant (PA) Pamela Burton recommended that the plaintiff remain "out of work until further notice" due to her uncontrolled diabetes type II. (Tr. 311). The plaintiff continued to complain of blurred vision, and on January 17, 2006, PA Burton stated that the plaintiff should continue off work. (Tr. 295). An ophthalmology exam on May 2, 2006, found no retinopathy, but

3

she was diagnosed with bilateral cataracts, which together with her uncontrolled diabetes, was causing vision problems. (Tr. 244; 273).

The plaintiff was examined by consultative examiner Dr. Samuel Balderman on October 4, 2006. She weighed 300 pounds and complained of headaches and low back pain. (Tr. 197-98). The examination revealed the plaintiff had normal gait and stance, could walk on heels and toes without difficulty, could squat 30% of full, had 20/70 visual acuity in the right eye, and 20/50 in the left eye. (Tr. 198). Dr. Balderman diagnosed obesity, diabetes, history of headaches, and inflammation of the left knee. (Tr. 199). He assessed a moderate limitation in prolonged walking, standing, kneeling, and climbing due to the plaintiff's obesity and effusion in the left knee. (Tr. 199-200).

Dr. Bucilli, an ophthalmologist, examined the plaintiff in May 2006, and summarized his assessment of the plaintiff's impairments in a medical source statement dated February 4, 2007 (Tr. 239-242). Dr. Bucilli had treated the plaintiff once in May 2006, and noted that the plaintiff did not follow up in three months as recommended, and had not followed up since then. (Tr. 239). Dr. Bucilli opined that the plaintiff's capacity for lifting, carrying, standing, walking, sitting, and pushing and pulling was unimpaired by the plaintiff's condition. (Tr. 239-240). Dr. Bucilli noted her visual acuity at that time was 20/40 in both eyes and that her limited visual acuity was secondary to cataracts and poorly controlled blood sugar. (Tr. 241).

On March 20, 2007, the plaintiff saw ophthalmologist Dr. David Montesanti, who diagnosed her with cataracts and type II diabetes mellitus without retinopathy. (Tr. 343). The plaintiff's corrected visual acuity at that time was 20/150 on the right and 20/100 on the left. (Tr. 343). The plaintiff subsequently underwent surgery for her

bilateral cataracts leaving her with a corrected visual acuity of 20/40 in both eyes. (Tr. 338; 341-42).

The ALJ found that the plaintiff has severe impairments: type II diabetes mellitus, obesity, bilateral cataracts, status post extraction and lens implantation, and inflammation of the knee. (Tr. 16). Despite these impairments, the ALJ determined that the plaintiff had the RFC to perform light work[1], and found that she was capable of performing her past relevant work as a Red Cross blood donor recruiter. (Tr. 26). The ALJ also found, given the plaintiff's age, education, and RFC for no more than sedentary work, that she could perform other work existing in significant numbers in the national economy. (Tr 27-28).

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits, and may set aside the Commissioner's decision only if it is based upon legal error or the findings of fact are not supported by substantial evidence. Substantial evidence is defined as "more than a mere scintilla," and evidence which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Social Security regulations set forth a five-step sequential evaluation in making disability determinations. 20 C.F.R. §§ 404.1520, 416.920. First, the

---

[1] In accordance with SSR 83-10, light work is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds, and standing /walking for 6 hours of an 8-hours workday.

5

Commissioner considers whether the plaintiff is currently engaged in substantial gainful activity.  If she is not, the Commissioner next considers whether the plaintiff has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities.  If the plaintiff suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the plaintiff has an impairment which meets or equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1.  If the plaintiff has such an impairment, the Commissioner will consider her disabled.  Assuming the plaintiff does not have a listed impairment, the fourth inquiry is whether she has the RFC to perform her past work.  Finally, if the plaintiff cannot perform her past work, the Commissioner must determine whether the plaintiff is capable of performing other work which exists in the national economy.  20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g).  The plaintiff bears the burden of proving the first four elements and the Commissioner bears the burden on the fifth element.  *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

      Here, the ALJ found that the plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 6, 2005, and she did suffer from severe impairments such as type II diabetes mellitus, obesity, bilateral cataracts, status post extraction and lens implantation, and inflammation of the knee.  However, the plaintiffs impairments did not meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1.  With respect to the plaintiff's diabetes under section 9.08 of the listing, there was no evidence of end-organ damage or systemic complications.  No diabetic retinopathy was found, instead bilateral cataracts were discovered and removed, and her vision greatly improved.  With respect to the plaintiff's left knee and

6

low back pain, the impairment did not come close to meeting the Listings 1.02 and 1.04.

Next, the ALJ found the plaintiff had the RFC to sit without any limitations, stand or walk for six hours, one-to-two hours at a time, lift or carry 10 pounds frequently and up to 20 pounds occasionally, and push/pull with similar strength limitations. (Tr. 17). She had no limitations in her capacity to reach, handle, grasp, or manipulate with the upper extremities, but she should avoid more than occasional kneeling due to her obesity and left knee inflammation. (Tr. 17). Given the plaintiff's RFC for at least sedentary work, the ALJ found she was capable of performing her past relevant work as a Red Cross blood donor recruiter. Accordingly, the plaintiff was not disabled. Although not required to do so, the ALJ proceeded to the fifth step and found that the plaintiff could perform other work existing in significant numbers in the national economy.

## II.      Failure to Consider Work Breaks and Headaches

The plaintiff argues the Commissioner's finding that she can perform light work and can return to her past relevant work as a Red Cross blood donor recruiter is not based on substantial evidence because the ALJ failed to consider her need for unscheduled work breaks and absences due to her uncontrolled diabetes type II, headaches, and obesity. The plaintiff testified that she lies down for three to four hours when her blood sugar is high, that she did not feel she could get through an eight-hour day without having a severe headache or migraine, and that she did not believe she could get through an eight-hour day without having to lie down. (Tr. 54). Therefore, the plaintiff argues her need to take unscheduled work breaks when she is experiencing the symptoms of uncontrolled blood sugar levels and her many emergency room visits will

7

preclude her from sustaining work.  However, the plaintiff's need for unscheduled work breaks and absences has not been confirmed by treating or examining sources, and is also contrary to her daily reported activities, such as her ability to independently care for herself and her adolescent son.  (Tr. 24; 37; 42-3).

The plaintiff also argues the Commissioner erred in failing to find the plaintiff's headaches are a severe impairment.  The plaintiff contends the ALJ erred as a matter of law in failing to properly apply the Second Circuit severity standard, which says a severe impairment is one which imposes "more than a minimal restriction on a person's ability to engage in basic work activities."  *Torres v. Shalala*, 938 F. Supp. 211, 215 n.8 (S.D.N.Y. 1996), *citing* 20 C.F.R. § 416.920(c); Social Security Ruling 88-3c.  The plaintiff testified at her hearing that she had gotten daily headaches for about a year prior to her hearing, and that she did not believe she could get through an eight-hour day without having a severe headache or migraine.  (Tr. 47-48; 53-54).  She complained of headaches during several emergency room visits, and her primary care physicians repeatedly noted they were told by the plaintiff that when her blood sugar was high, she got a headache.  (Tr. 171; 173; 181; 183; 234; 256; 269).  However, there is no evidence that the plaintiff's headaches are caused by a medically determinable impairment.  Symptoms alone cannot establish that an impairment is severe without a medically determinable impairment that could reasonably be expected to produce the symptoms.  SSR 96-3p; *Gallagher v. Schweiker*, 697 F.2d 82, 85 (2d Cir. 1983).  Every reference to headaches in the plaintiff's memorandum is a subjective complaint recorded by the plaintiff's physicians, not a physician diagnosing headaches through medically acceptable techniques.  There is no objective medical evidence that the

plaintiff experiences headaches to such a degree they would interfere with work activities.

The Commissioner is not obligated to accept the plaintiff's subjective complaints of daily migraines and a need to lie down for extended periods of time without question, and has the discretion to evaluate the plaintiff's credibility in light of evidence in the record. *See Carrol v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982). The decision by the Commissioner to discount the plaintiff's subjective complaints is supported by substantial evidence in the record. The plaintiff had not complied with her medication routine on several occasions. (Tr. 171; 289; 311; 326). There was no objective medical evidence to support the plaintiff's assertion of her need to lie down for three to four hours, as well as chronic and disabling headaches, when her glucose levels were high. Additionally, the plaintiff's daily activities are substantial; she cares for herself and her adolescent son by washing dishes, doing laundry, mopping, sweeping, vacuuming, handling her own money, and keeping doctors appointments. (Tr. 24; 37; 42-43). The plaintiff states she is able to care for her personal needs without help. (Tr. 141).

In light of the lack of objective medical evidence supporting the plaintiff's subjective complaints, coupled with evidence indicating that those impairments do not preclude her from doing significant daily activities, it was within the ALJ's discretion to reject the plaintiff's subjective complaints in favor of evidence indicating she was capable of performing light work. *See Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (The ALJ may reject subjective complaints where it is inconsistent with other evidence in the record).

### III. Failure to Consider Obesity

The plaintiff contends the ALJ erred by not properly evaluating her obesity under Social Security Ruling 02-1p, which states obesity is a "severe" impairment when it significantly limits an individual's physical or mental ability to do basic work activities. The plaintiff argues the ALJ failed to do an individualized assessment of the impact of obesity on her functioning, specifically the effects of the plaintiff's obesity on her diabetes, joint pain, mobility, and fatigue. Despite the plaintiff's contentions, the ALJ fully evaluated the plaintiff's obesity in assessing her RFC. The ALJ found that while the plaintiff's obesity did preclude her from performing sustained, strenuous activity, it did not preclude her from performing sedentary and light work. (Tr. 25). Consistent with the ALJ's finding, the consultative examiner found only moderate limitation in prolonged standing, walking, kneeling, and climbing due to her obesity. (Tr. 199). Furthermore, the record indicates that the plaintiff's weight had been consistent for five years prior to her hearing, and that she had successfully worked in various jobs requiring prolonged standing and walking, as well as moderately heavy lifting, despite her obesity. (Tr. 25; 37).

### IV. Ability to Perform Past Work

The plaintiff alleges that the ALJ's finding that she could return to her past relevant work is not supported by substantial evidence. In evaluating whether the plaintiff can perform past relevant work, the ALJ must carefully appraise both the plaintiff's statements as to why she can no longer perform such work and medical evidence establishing how the impairment limits her ability to do such work. The plaintiff

has not met her burden of proof to demonstrate that she cannot perform her past relevant work. She testified that her past work as a Red Cross blood donor recruiter involved calling past and present blood donors and encouraging them to donate again, as well as fielding calls and scheduling appointments for people looking to donate blood. (Tr. 41). The ALJ found the plaintiff is capable of returning to her past work as a blood donor recruiter because it does not require any activity over the "sedentary" level of exertion, which the record reflects the plaintiff can perform. (Tr. 26). The consultative examiner found the plaintiff had only a moderate limitation in prolonged walking, standing, kneeling, and climbing due to her obesity and left knee pain, but no other restrictions. (Tr. 21, 199-200). Furthermore, the plaintiff's visual limitations did not constitute a substantial restriction, as surgery had restored her eyesight to essentially normal corrected visual acuity. (Tr. 25, 338). Thus, the ALJ's finding that the plaintiff has the RFC to perform her past work is supported by substantial evidence.[2]

## CONCLUSION

For the reasons stated, the ALJ properly found that the plaintiff was not disabled because she retained the ability to do her past relevant work, as well as other work which exists in significant numbers in the national economy. The Court grants the Commissioner's motion for judgment on the pleadings and denies plaintiff's motion for judgment on the pleadings.

---

[2] The ALJ considered, but did not accord substantial weight, to the treatments notes of PA Pamela Burton stating that the plaintiff was unable to return to work (the plaintiff was working as a nurse's assistant at that time). (Tr. 24; 295; 299; 311). However, a physician's assistant is not an "acceptable medical source," entitled to weight assigned to treating or examining physicians under the regulations. (Tr. 24); 20 C.F.R. § 404.1502; SSRs 96-2p, 06-03p. Furthermore, no physician or other medical source suggested that the plaintiff was permanently incapable of working, and the plaintiff may have been able to return to other, less strenuous work during the period in question. (Tr. 24).

11

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: June 18, 2010